(40 App. Div. 574.)

### CONNELLY v. O'BRIEN et al.

(Supreme Court, Appellate Division, Third Department. May 3, 1899.)

WILLS—CONTINGENT INTEREST.

> Under a will by which testator gives all his estate to his wife during her life, and then to such of his children as may then be alive, where a child dies before the mother its share goes to testator's other children who are alive at the mother's death, and not to the deceased child's children.

Appeal from trial term, Rensselaer county.

Action for partition by James B. Connelly against Edmund O'Brien and others. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

H. D. Bailey, for appellant.
John T. Norton, for respondents.

LANDON, J. The action was brought for the partition of certain real estate whereof James Higgins, grandfather of the plaintiff, died

seised in 1855. He left a last will and testament, in which the disposing words are: "I give all my estate, real and personal, after the payment of my debts, to my wife, Rose, during her life, and then to such of my children as may then be alive, share and share alike." The testator was survived by his wife, Rose, who died in 1879, and by six children, of whom Margaret married James B. Connelly in 1873, and died in 1874, intestate, leaving the plaintiff her only son and heir. If his mother or himself took a vested absolute estate under his grandfather's will, then it was error to dismiss the complaint. The defendant O'Brien acquired the premises under the devisees named in the will, who survived their mother, Rose Higgins. We think the learned trial court properly held that neither the plaintiff nor his mother took an estate under the will. The testator gave all his estate, real and personal, after the payment of his debts, to his wife, Rose, during her life, "and then to such of my children as shall then [that is, at her death] be alive." If we grant that Margaret was given a contingent remainder, subject to be defeated by her death in the lifetime of her mother, as she did die in such lifetime, such remainder vested in such of the testator's children as were then alive. Such is the meaning which naturally strikes the mind before it begins a search for other possible meanings. But making such search, assisted by the very learned and ingenious argument of the appellant's counsel, other meanings are suggested. Counsel suggests that the words "and then," preceding the gift of the remainder, simply serve to indicate the order of the two gifts, as—First, "I give * * * to my wife, Rose, during her life, and then" (that is, second) "I give the remainder," etc. This construction is permissible. In view of the rule that the courts lean in favor of a permissible construction which will avoid disinheriting a child, or a grandchild, the issue of a deceased child, and in favor of the immediate, rather than remote, vesting of legacies and devises, we adopt this construction. The will may then be considered as if its words were: "First, I give all my estate to my wife, Rose, during her life" (that is, until her death); second, I now give the remainder "to such of my children as shall then be alive." If the testator had omitted the second "then," we could agree with the plaintiff. The testator sorted his children into two classes—the living and the dead—with reference to time indicated by his second "then," and did not leave it for the court to supply constructive time in its stead. His children were all living when he made his will. He contemplated that some might die in the lifetime of his widow, and in using the last "then" he referred to the time of her death. The second "then," unlike the first "and then," does not indicate the order in which the testator is making his gifts, but indicates some future time when some of his children living at the date of his will might be dead. If so, he excludes them. The learned counsel for the plaintiff urges that, as the will takes effect at the death of the testator, it speaks then for the first time, and therefore his death is the future time meant by him. The will may be said to speak as of the death of the testator, but that simply means that until then it does not become a will in legal sense. The fact remains that the testator, when he was making his will, was a living man, and

spoke as such, and spoke then, however long such speech preceded his death. It is a fiction which assumes his speech and its intent to be as of the instant when both become impossible; and hence if his intent, when actually expressed,—that is, in the making of his will,—is clear, no fiction should supersede or displace it. The will speaks after the death of the testator, but in his language, and with his intent and meaning as of the date of its making. If, as we think true, the future time to which he referred in his last "then" clearly appears to be at his wife's death, we cannot eliminate that word, and refer it to his own death. The counsel reminds us that the courts lean strongly to such construction, in order that the estates given shall vest at the death of the testator, and not remotely or contingently, and that disinheritance of children may be averted. That is true, if permissible within the language of the will, and not in violation of its manifest meaning. Counsel also urges that the grammatical rule requires us to consider the last "then" as an adverb of time (which we concede) referring to its nearest antecedent indicative of the time meant, which is the implied verb "give," preceding the last "then," and, as that constructively speaks as of the death of the testator, therefore the time indicated is such death. But when the context makes it plain that the antecedent indicating the time meant is not the nearest, then the court must disregard the grammatical rule. In fact, the grammarian cannot well reduce to uniform rules the concise and elliptical forms of speech which usage has made apt to imply meanings, instead of fully expressing them. Where the testator does not speak of the death of his wife, he implies it by the words "during her life," and the implication is clear, and clearly points to the time indicated by the second "then."

The learned counsel cites cases in which the courts have gone far in doubtful cases in holding, when necessary to prevent the exclusion of grandchildren, that the death or survivorship of the children of the testator refers to a death in his lifetime. But they have always professed to adhere to the rule that, if the testator's language is fairly opposed to such a construction, it is inadmissible. Patchen v. Patchen, 121 N. Y. 432, 24 N. E. 695; McGillis v. McGillis, 154 N. Y. 532, 49 N. E. 145; Mead v. Maben, 131 N. Y. 255, 30 N. E. 98; Vanderzee v. Slingerland, 103 N. Y. 47, 8 N. E. 247; Carmichael v. Carmichael, 1 Abb. Dec. 309; Schwencke v. Haffner, 18 App. Div. 184, 45 N. Y. Supp. 937. There are no words in the will indicating that the word "children" includes grandchildren. Palmer v. Horn, 84 N. Y. 516.

Judgment affirmed, with costs. All concur.